## STATE *v.* SPEAR AND DENSMORE.

### *Indictment.  Bail.*

The fact that an indictment, found against a respondent and properly presented in open court at one term, but not entered upon the docket until the succeeding term, is not a cause for discharging his bail.

HEARD on motion to discharge the bail, December Term, 1881, POWERS, J. presiding. The motion was overruled. The respondent was indicted for larceny. The case appears in the opinion.

*C. W. Clark* and *A. S. Austin,* for the surety.

If the principal had been present and the indictment had been permitted to lie dormant, as was done in his absence, he would have been discharged beyond question. Baylies on Sureties & Guar., 284; *Townsend* v. *The People,* 14 Mich. 388. And a discharge of the principal is a discharge of the surety. The surety, in the absence of the principal, is entitled to the same rights to which the principal is entitled if present.

An unauthorized continuance of a case operates everywhere a discontinuance of the same; and if delay is permitted, it should appear of record to have been for cause. *Helper* v. *The State,* 43 Wis. 479; *Harrington* v. *The State,* South. Law Review, 1880, p. 459.

A delay of a cause without the surety's consent, although by

consent of the principal, has been held by the highest court in the Union to amount to a discharge of the surety. *Reese* v. *The United States*, 9 Wall. 13, and cases there cited.

*S. B. Hebard*, for the State.

The opinion of the court was delivered by

TAFT, J.  The indictment found against Spear, the principal, was properly presented in open court, at the June term, but was not entered upon the docket until the succeeding term, when Densmore, the bail, entered and moved that he be discharged, and urged as a reason, the fact, that the case was not docketed at the June term ; and insisted that this was an irregularity, the effect of which was to discharge him as bail.

The theory of the law is that a man's bail are gaolers of his own choosing, and he is as much under the power of the court as if he was in the custody of the proper officer, and if they produce him in court they answer the end of the law and do all that is required of them.  1 Bac. Ab. 360.  They cannot of course subject him to constant imprisonment, but he is so far in their power, that they may at any time arrest him upon the recognizance and surrender him to the court, and to do this may, so far as is necessary, restrain him of his liberty.  Upon a recognizance being entered into in a criminal cause, there is an implied covenant on the part of the government that it will not in any way take proceedings with the principal which will increase the risks of the sureties or affect their remedies against the principal.  *Reese* v. *United States*, 9 Wal. 13.  Did the fact that the case was not entered on the docket have that effect ?  Did it in fact have any force in changing the rights of the surety ?  We think not.  It has always been the practice in this State, if the State's attorney deemed it advisable, to delay the entry upon the docket until the end of the term.  It is at times necessary to do this to prevent the escape of indicted parties.  There is no reason why it should not be done, if necessary for the furtherance of justice.  The bail had the right, at the term when the indictment was found, even if the case was not entered upon the docket, to surrender the principal in

court in discharge of his recognizance. The indictment had been presented in open court, and the case was in court, although not docketed, and whether by design, or inadvertently, the surety was not, and could not be, deprived of his right of surrender, and of having an exonereter entered upon the record. Such right was in no way affected by the non-entry of the case upon the docket. In *Reese* v. *United States*, *supra*, the sureties were held to be discharged for the reason that the government had consented that the principal might place himself beyond the reach and control of the sureties. They were unable to surrender him, by reason of the acts of the government. It was clearly inequitable and unjust to hold the sureties liable under such a state of facts. The case of *Townsend* v. *The People*, 14 Mich. 388, relied upon by the defendant, is not in point; for the court held that the recognizance when taken was null and void ; the surety was never liable.

What the effect would be, in a case where the proceedings are permitted to slumber, and no action taken in the cause, where the attention of the court is not called to the matter in any way, we do not decide, as that is not the case before us.

We think, upon the facts as shown in this case, the rights of Densmore were not affected by the claimed irregularity. Neither do we decide whether the matter is properly before us upon motion for a discharge, as it is unnecessary to pass upon that question. In *The King* v. *Clark*, 5 B. & A. 728, the respondent entered into a recognizance somewhat similar to the one in this case, to appear and plead at Trinity term, and to try the case at the Middlesex sittings after that term, and to appear on the return of the postea if convicted ; he did not give notice of trial or make up the record either after Trinity or Michaelmas terms, but afterwards in Hilary term, upon motion of the government, the recognizances were estreated, and the court of King's Bench held the proceedings " quite regular, and conformable to the ordinary practice of the court," as we think they should be in this case.

Let the judgment be affirmed.